UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| JEFFERY S., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6:24-CV-106-CHB |
| ) | |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL ) | **MEMORANDUM OPINION** |
| SECURITY, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Claimant Jeffery S.'s Opening Brief. [R. 11]. The Commissioner responded, [R. 13], and Claimant filed a Reply, [R. 14]. Therefore, the matter is ripe and ready for review. For the reasons that follow, the Court will affirm the final decision of the Commissioner.

**I.   BACKGROUND**

On June 24, 2022, Claimant Jeffery S. protectively filed an application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 1382c(a)(3) (the "Act"), [R. 8, p. 14 (Administrative Record) (hereinafter "Administrative Transcript" or "Tr.")]; *see also id.* at 193–94.[1] He alleges disability beginning on February 28, 2020, due to "OCD, depression, anxiety, fibromyalgia, lumbar disc disease, cervical disc disease, anterior osteophytes, hypertension, and high fast heart rate." *Id.* at 14, 81, 220. Claimant's application was denied initially, *id.* at 103–106, and upon reconsideration. *Id.* at 115–118. At Claimant's request, a hearing was held July 14, 2023 before Administrative Law Judge ("ALJ") Antony Saragas. *Id.* at 50–80.

---

[1] The Court uses the numbering system assigned by the Court's electronic filing system.

- 1 -

With Claimant's consent, the hearing was held by telephone due to the Coronavirus pandemic. *Id.* The ALJ issued an unfavorable decision dated September 6, 2023, *id.* at 14–38, and the Appeals Council affirmed. *Id.* at 5–10.

In making his determination, ALJ Saragas applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim. 20 C.F.R. § 404.1520; *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). In summary, the evaluation process proceeds as follows:

1. Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

2. Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

3. Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

4. Does the claimant have the Residual Functional Capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

5. Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden

of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

First, ALJ Saragas found that Claimant met "the insured status requirements of the Social Security Act through March 31, 2024," [Tr. 16], and did not engage in substantial gainful activity at any point since February 28, 2020, Claimant's alleged onset date. *Id.* Second, he found Claimant has the severe impairments of "degenerative disc disease cervical, thoracic, and lumbar spine, fibromyalgia, hypertension, obesity, and depressive, personality, and anxiety disorders." *Id.* Third, ALJ Saragas found that none of Claimant's impairments or combination of impairments meet or medically equal the severity of a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App'x 1. *Id.* at 17; *see also id.* at 17–19. ALJ Saragas then determined Claimant has the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b),

> except no more than four hours standing/walking per day; occasional stooping, kneeling, crouching, crawling, and climbing ramps/stairs; no climbing ladders, ropes or scaffolds; no workplace hazards, such as unprotected heights or moving mechanical parts, and no commercial driving; no work on uneven terrain; occasional overhead reaching with the bilateral upper extremities; occasional interaction with coworkers, supervisors, and the public; and occasional changes in the workplace environment in routine.

*Id.* at 19; *see also id.* at 19–35 (discussing RFC determination). Fourth, ALJ Saragas found Claimant is "unable to perform any past relevant work." *Id.* at 35. Fifth and finally, considering Claimant's age, education, work experience, and RFC, ALJ Saragas determined "there are jobs that exist in significant numbers in the national economy that the Claimant can perform." *Id.* at 36.

Based on this evaluation, ALJ Saragas concluded that Claimant was not disabled, as defined in the Social Security Act, at any point since his alleged onset date through the date of the ALJ's decision. *Id.* at 37. Claimant sought administrative review of the decision, and the Appeals Council declined review on June 17, 2024. *Id.* at 5–10. At that point, ALJ Saragas's decision became the final decision of the Commissioner, and Claimant sought judicial review from this

Court on July 29, 2024. [R. 1].

## II.   LEGAL STANDARD

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Colvin v. Barnhart*, 475 F.3d 727, 729–30 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must "affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

## III.   ANALYSIS

Claimant argues that ALJ Saragas failed to properly evaluate the medical evidence offered by Dr. Leigh Ann Ford, his consultative psychological examiner, and as a result, the ALJ erred in making his determination regarding Claimant's RFC. [R. 11, pp. 10–14]. Further, Claimant contends this error was not harmless, as it influenced the ALJ's findings at step 5, meaning that the decision warrants remand. *Id.* at 15; *see* [R. 14, pp. 5–7]. In response, the Commissioner asserts that the ALJ properly considered Dr. Ford's medical opinion evidence and that "there is no merit" to Claimant's arguments concerning step 5. *See* [R. 13, pp. 3–8].

### A.   Medical Evidence and RFC

The Court turns to Claimant's challenges concerning ALJ Saragas's consideration of the relevant medical evidence. Claimant presents two challenges to the ALJ's handling of the medical

- 4 -

opinion evidence of Dr. Ford, Claimant's consultative psychological examiner: ALJ Saragas did not comply with § 404.1520c(b)–(c), [R. 11, pp. 11–13], and did not "create a logical bridge between the evidence and his conclusion that enables meaningful judicial review." *Id.* at 14–15. As a result of these errors, Claimant claims that the RFC determination "is not supported by substantial evidence." [R. 14, p. 1].

> In her Consultative Examination with Claimant, Dr. Ford opined that:
>
> [Claimant's] ability to understand, remember, and carry out instructions toward performance of simple repetitive tasks is not affected by the impairment. The person's ability to tolerate stress and pressure of day-to-day employment is affected by the impairment with moderate to marked limitations noted (due to symptoms of depression and anxiety). The person's ability to sustain attention and concentration towards simple repetitive tasks is affected by the impairment with slight limitations noted. The person's capacity to respond appropriately to supervision, co-workers, and pressures in a work setting is affected by the impairment with moderate limitations noted.

[Tr. 640 (emphasis removed)]. Dr. Ford's assessment included that Claimant's "[t]hought content was appropriate and consistent with mood," but his "[a]ttention and concentration appeared to be somewhat variable." *Id.* at 639–40. Further, while Dr. Ford found Claimant's "[j]udgment [to be] adequate," with "no trouble understanding directions for simple tasks," Dr. Ford also noted that Claimant's "coping skills appear to be overwhelmed," even with familial support. *Id.*

An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c), 416.945(a)(1), 416.946(c). The ALJ bases his or her determination on all relevant evidence in the case record, including statements from medical sources. 20 C.F.R. §§ 404.1529, 416.929, 404.1545(a)(1)–(4). Thus, in making his or her determination of a claimant's RFC, an ALJ must necessarily evaluate the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 416.920c, 404.1529(a), 416.929(a). The claimant bears the

burden of proof with respect to this step. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan*, 548 F.3d at 423. The claimant always retains the burden of proving lack of RFC. *Id.*; *Her*, 203 F.3d at 392.

The new regulations for evaluating medical opinions are applicable here since Claimant's claim was filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Under the new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). An administrative law judge must consider supportability, consistency, relationship with the claimant, specialization, and other factors when determining the persuasiveness of an opinion. 20 C.F.R. § 404.1520c(c)(1)–(5). But the administrative law judge need only explain how she considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion(s) will be. 20 C.F.R. § 404.1520c(c)(1). The more consistent the medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be. 20 C.F.R. § 404.1520c(c)(2). "[T]he measuring stick for an 'adequate discussion' [of these factors] is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of his finding as to whether the particular medical opinion was supported by substantial evidence." *Terhune v. Kijakazi*, No. 3:21-37-KKC, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022) (citations omitted).

"If any material inconsistencies or ambiguities exist, the ALJ must explain how [they] were

considered and resolved. Courts within the Sixth Circuit have interpreted this ruling to require that the ALJ must always build an accurate and logical bridge from the evidence to her conclusions." *Skelton v. Kijakazi*, No. 21-2-DLB, 2022 WL 3031750, at *4 (E.D. Ky. Aug. 1, 2022) (alteration in original) (internal quotation marks and citations omitted). "ALJs are required to 'provide an accurate and logical bridge between the evidence and the conclusion[,]' but are not required to explicitly mention or discuss every piece of evidence in the record." *Tyrian C. v. Kijakazi*, No. 3:21-CV-00568-RGJ, 2023 WL 310179, at *8 (W.D. Ky. Jan. 23, 2023), *report and recommendation adopted*, 2023 WL 258357 (W.D. Ky. Jan. 18, 2023) (alteration in original) (quoting *Logsdon v. Kijakazi*, No. 1:20-CV-00177-GNS, 2022 WL 812416, at *5 (W.D. Ky. Mar. 16, 2022)).

Claimant alleges that ALJ Saragas did not comply with § 404.1520c(b)–(c) because he "failed to discuss the required supportability and consistency factors," [R. 11, p. 13], and did not include adequate "analysis." [R. 14, p. 3]. In particular, Claimant argues that ALJ Saragas did not discuss the supportability of Dr. Ford's opinion in relation to the objective medical evidence, and he did not provide "an *actual* explanation that provides an accurate and logical bridge between the evidence and his conclusions." [R. 11, p. 14 (emphasis in original)].

In considering Dr. Ford's opinion, ALJ Saragas provided the following:

> The consultative psychological examiner, Leigh Ann Ford, Ph.D., opined in September 2022 that the claimant's ability to understand, remember, and carry out instructions toward performance of simple repetitive tasks is not affected by his impairment; he has moderate to marked limitations in his ability to tolerate stress and pressure of day-to-day employment; he has slight limitations in his ability to sustain attention and concentration toward simple repetitive tasks; and has moderate limitations in his capacity to respond appropriately to supervision, coworkers, and pressures in a work setting. (7F). The undersigned finds this opinion partially persuasive, with the limitations merged with the findings from the DDS reviewing psychological consultants and modified to the extent the whole record reasonably supports. The opinion is supported with the examination findings, including somewhat restless motor activity, normal speech, somewhat tense facial

expressions, eye contact maintained, variable affect, pessimistic and depressed mood, somewhat variable attention and concentration, limited abstraction capacity, gaps in insight, and overwhelmed coping skilled, *but* memory was normal, thought content was appropriate and consistent with mood, organization of thought was logical and goal oriented, fund of knowledge was average, judgment was adequate, reality testing was good, and he had no trouble understanding directions for simple tasks. (7F). The opinion is also partially consistent with the record as a whole, which shows consistently benign mental status/psychiatric findings, including alert and cooperative, intact remote and recent memory, intact/normal attention/concentration, normal thought processes, normal speech, no aphasia, intact/appropriate judgment and insight, full orientation, and intact general fund of knowledge. He was consistently noted to deny suicidal or homicidal ideation. His complaints of anxiety and depression symptoms fluctuated between none and increased/worsening symptoms, but he reported some improvement with medications. (5F, 6F, 8F, 10F, 11F with pin citations above).

[Tr. 32 (emphasis added)].

The Court finds that the ALJ sufficiently articulated the supportability and consistency of Dr. Ford's opinion. Turning to ALJ Saragas's evaluation of the supportability of Dr. Ford's opinion, he found that her opinion was supported by her examination findings. *Id.* The ALJ did not disagree with the supportability of Dr. Ford's opinion when comparing it to her exam findings; in fact, ALJ Saragas explained in detail the specific findings from Dr. Ford's exam findings that were supported by the record and listed them in his evaluation of her opinion. *Id.* Ultimately, ALJ Saragas noted that Dr. Ford's findings appeared to be a mixed bag, with some findings reflecting impairment while other findings were normal. *See, e.g.*, *id.* (listing Dr. Ford's findings reflecting some impairment then noting, "but memory was normal, thought content was appropriate and consistent with mood, organization of thought was logical and goal oriented, fund of knowledge was average, judgment was adequate, reality testing was good, and he had no trouble understanding directions for simple tasks"). This explanation is sufficient. *See Wroblesky v. Comm'r of Soc. Sec.*, No. 1:23-cv-232-JEG, 2023 WL 7131807, at *10 (N.D. Ohio Oct. 30, 2023) (determining that the ALJ had discussed the supportability of a provider's opinion by "reviewing

[the provider's] own examination findings"); *see also Fisk v. O'Malley*, No. 5:23-CV-00261-MAS, 2024 WL 4194307, at *4 (E.D. Ky. Sept. 13, 2024) (determining that, "[t]hough the ALJ could have drafted his opinion with more detail or precision or with additional citations to the medical evidence," he provided an "'accurate and logical bridge,'" which is sufficient (citation omitted)); *Tyrian C.*, 2023 WL 310179, at *7 ("Even when an ALJ finds an opinion to be persuasive, he is not required to adopt its limitations verbatim.").

With respect to consistency, however, the ALJ found that Dr. Ford's opinion was only partially persuasive. [Tr. 32]. As the parties noted, ALJ Saragas did not incorporate one of Dr. Ford's moderate-to-marked limitations into the RFC: Claimant's ability to tolerate the stress and pressure of daily employment, which Dr. Ford noted was due to Claimant's depression and anxiety. *Id.*; *see id.* at 640; [R. 11, p. 14]; [R. 13, p. 5]. Claimant alleges that (1) ALJ Saragas's failure to identify the limitation from Dr. Ford's opinion that he did not adopt constituted reversible error, and (2) regardless of the identification issue, ALJ Saragas did not sufficiently articulate the consistency of Dr. Ford's opinion to create an "accurate and logical bridge," and this error requires remand for further proceedings. [R. 11, pp. 10–14]; [R. 14, pp. 2–3]. The Commissioner disagrees, claiming that the ALJ's decision demonstrated that ALJ Saragas did not adopt Dr. Ford's limitation on stress and pressures of daily employment, and he adequately demonstrated why he did not adopt such restriction. *See* [R. 13, pp. 5–8].

Importantly, the Court may not rely on *post hoc* arguments to find that the ALJ's decision properly evaluated the factor of consistency, and it must find that the stated reasons "'build an accurate and logical bridge between the evidence and the result.'" *Marika G. v. O'Malley*, No. 3:24-CV-00105-CRS-RSE, 2024 WL 5465207, at *5 (W.D. Ky. Dec. 19, 2024) (quoting *Terhune*, 2910002, at *5). In this case, they do. In his description, ALJ Saragas contrasted Dr. Ford's opinion

with the record as a whole sufficient to show an "accurate and logical bridge" between his evaluation and the medical evidence when determining Claimant's RFC. *Id.* (internal quotation marks omitted). Although Dr. Ford believed that Claimant's depression and anxiety warranted the moderate to marked limitation in his ability to tolerate stress and work-related stresses, *see* [Tr. 640], other evidence in the record showed "benign mental status/psychiatric findings." *Id.* at 32, 35. Further, Claimant's "complaints of anxiety and depression symptoms fluctuated between none and increased/worsening symptoms, but he reported some improvement with medications." *Id.* at 32. ALJ Saragas cited to the evidence on which he relied, *see id.* (citing *id.* at 349–506, 507–635, 641–72, 680–758, 759–80), and considered the medical evidence from a variety of Claimant's providers and consultative examiners, and he also thoroughly explained why the record evidence did not support adopting a marked limitation in Claimant's ability to tolerate stress and work-related stresses due to depression and anxiety during his broader discussion of the medical evidence:

> The claimant's conservative medication management care and the repeated benign mental status/psychiatric examination findings, including alert and cooperative, intact remote and recent memory, intact attention/concentration, normal thought processes, normal speech, no aphasia, intact/appropriate judgment and insight, fully oriented, intact general fund of knowledge, no suicidal or homicidal ideation, and overall normal/appropriate mood and affect, although at times were noted to be depressed and/or anxious, as well as the claimant's fiancé[']s reports that they have a good relationship and that he gets along with others "good[,]" (4E/8) [ ]all fail to support any marked limitations. (*See*, 2F, 3F, 4F, 5F, 6F, 8F, 10F, 11F with pin citations above).

*Id.* at 31, 35; *see id.* at 33 ("The record as a whole supports no more than mild to moderate mental health limitations."); *id.* at 32 (finding Dr. Ford's opinion "partially persuasive" with the findings of the other psychological consultants, "modif[ying]" her opinion "to the extent the whole record reasonably supports," and citing to the other medical evidence "with pin citations above"); *see also Tyrian C.*, 2023 WL 310179, at *6 (discussing how ALJ's evaluation of the opinion evidence

elsewhere in the RFC determination is sufficient); *Newman v. Kijakazi*, No. 5:22-59-KKC, 2023 WL 2700700, at *5 (E.D. Ky. Mar. 29, 2023) (explaining how the ALJ considered evidence of the claimant's mental impairments at step 3). *But see LaFollette v. Kijakazi*, No. 3:22-CV-32-REW, 2023 WL 7167177, at *7 (E.D. Ky. Sept. 18, 2023) (finding that the ALJ erred when he "found the [providers'] opinions persuasive but then failed to act consistently (or forged ahead incompletely) with that finding. . . . Essentially, the ALJ said one thing . . . but did another. . . . In this way, the ALJ failed to 'build an accurate and logical bridge.'" (citation omitted)).

To Claimant's point that the ALJ failed to designate which portion of Dr. Ford's opinion he disagreed with, the Court finds this argument wholly unpersuasive. Dr. Ford only presented one "marked" limitation, *see* [Tr. 640], and ALJ Saragas directly rejected any marked limitation, *see id.* at 31 (noting the medical evidence "fail[s] to support any marked limitations"), and explained why he did not find any marked limitations when determining Claimant's RFC. *Id.* at 31, 35; *see id.* at 33 ("The record as a whole supports no more than mild to moderate mental health limitations.").

While Claimant may believe that the ALJ should have specifically discussed all of the other medical evidence when evaluating the supportability and consistency of Dr. Ford's opinion, or phrased his discussion differently,[2] "[t]he ALJ's explanation as to persuasiveness 'does not need to be lengthy.'" *Newman*, 2023 WL 2700700, at *2 (quoting *Terhune*, 2022 WL 2910002, at *4). Indeed, he "is not required to mention every piece of evidence but must [only] provide an accurate

---

[2] Claimant argues that "the ALJ unnecessarily complicate[d] his rationale by phrasing his position in a ridiculously less than straight forward manner." [R. 11, p. 12]. The Commissioner responds to this argument by stating, "the fact that Plaintiff disagrees with the ALJ's word choice does not provide a basis for remand." [R. 13, p. 6]. Indeed, the ALJ's discussion "must [only] provide an accurate and logical bridge between the evidence and the conclusion that the claimant is not disabled[.]" *Fisk v. O'Malley*, No. 5:23-CV-00261-MAS, 2024 WL 4194307, at *4 (E.D. Ky. Sept. 13, 2024) (alterations in original) (internal quotation marks omitted) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). There is no requirement as to how the discussion of supportability and consistency is worded. *See id.* ("Such specificity or magical incantation of words is not required.").

and logical bridge between the evidence and the conclusion that the claimant is not disabled[.]" *Fisk*, 2024 WL 4194307, at *4 (alterations in original) (internal quotation marks omitted) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). ALJ Saragas explained the supportability and consistency of Dr. Ford's opinion, *see* [Tr. 32]. Moreover, he even adopted most of her limitations, while explaining why the record evidence did not support a marked limitation for any mental impairment, *id.* at 19, 31–32, 35, and directly pointing back to his lengthy review of the medical records supporting his RFC. *Id.* at 32 (listing the medical records "with pin citations above"); *see Peters v. O'Malley*, No. 6:24-CV-11-REW, 2024 WL 5077599, at *5 (E.D. Ky. Dec. 10, 2024) ("[The ALJ] sufficiently articulated his reasoning, citing ample sources in the record to support his conclusions . . . relative to the consistency factor. . . . On review, the Court's role ends there."); *id.* ("[T]he Court on review does not weigh supportability and consistency; it looks only to 'whether the ALJ sufficiently articulated those factors.'") (quoting *Griffin v. Kijakazi*, No. 2:22-CV-57-DCP, 2023 WL 3573734, at *7 (E.D. Tenn. May 19, 2023))). Here, for the reasons outlined above, the Court finds that the ALJ sufficiently articulated the factors of supportability and consistency when evaluating Dr. Ford's medical opinion.

Upon review by the Court, ALJ Saragas's findings regarding Dr. Ford's opinion, and as a result, Claimant's mental RFC, are supported by substantial evidence. Indeed, the medical evidence on which ALJ Saragas relied supports his determination that Claimant's "conservative medication management care and the repeated benign mental status/psychiatric examination findings" did not warrant greater restrictions on Claimant's RFC. [Tr. 35]. "Impairments that are controllable or amenable to treatment cannot support a finding of disability." *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010); *see Mitchell v. Comm'r of Soc. Sec.*, 2013 WL 4042920, at *3 (E.D. Ky. Aug. 8, 2013) (same); *Coleman v. Comm'r of Soc. Sec.*, No. 20-11568,

2021 WL 2560242, at *14 (E.D. Mich. June 7, 2021) ("[T]he fact [that] Plaintiff is on medication does not alone suggest work-related limitations under the disability evaluation procedure."). Specifically, Claimant advised his providers that medication, including Buspar, "help[ed]" his depression and anxiety symptoms on multiple occasions. [Tr. 381, 684 ("He states his anxiety is better when he remembers to take the Buspar. . . . He feels like the Viibryd has helped some with the depression")]; *id.* at 718 (reporting during telehealth appointment that medication has helped his symptoms); *id.* at 739 ("Patient is followed by mental health clinic and recently his dose of Buspar was recently increased. Patient has noticed some improvement in his anxiety. Patient is on Trintellix for depression and states this has improved his depressive symptoms."); *id.* at 744 (noting improvements); *id.* at 467 (trying new anxiety medication). The record shows that Claimant chose not to increase his dosage of an antidepressant on occasion. *See id*. at 685 (choosing not to increase dosage of Viibryd).

The medical evidence does show that Claimant was working with a mental health provider and reported periods of anxiousness and depression. *See id.* at 363, 682, 692, 698, 709, 716, 737; *id.* at 688 (encouraging Claimant to keep a mood journal); *id.* at 410 (complaining of anxiety but denying depression). However, the record is also filled with unremarkable psychiatric exams. *Id.* at 387, 390, 437, 441, 445, 449, 454, 458, 462, 467, 481, 489, 733 (noting "normal mood and affect"); *id.* at 393 (denying anxiety symptoms); *id.* at 517, 525, 528, 532, 535, 548, 647, 650, 653, 656, 660, 761, 764, 767, 770, 773, 776, 779 (calling Claimant's "mood and affect [ ] [a]ppropriate"); *id.* at 685, 694 (reporting "no depression, anxiety, or agitation" during physical exam). Further, there are large portions of Claimant's treatment history devoid of any complaints about mental health issues, including depression and anxiety. *Id.* at 414–64, 475–90. In addition, ALJ Saragas thoroughly explained Claimant's mental health history at step 4 of his decision, *see*

*id.* at 27–35, and he explained why he imposed greater restrictions than some providers found, *id.* at 31, and fewer restrictions than other providers found, *id.* at 31–33. Other than his arguments regarding the ALJ's assessment of Dr. Ford's opinion—which the Court has already addressed—Claimant has not pointed to any evidence to show where ALJ Saragas's RFC determination was not supported by substantial evidence, which is his burden to prove. *Jordan*, 548 F.3d at 423; *Her*, 203 F.3d at 392. Thus, ALJ Saragas complied with the regulations by discussing both the supportability and consistency of the assessment, and his discussion of Claimant's RFC was supported by substantial evidence and sufficient to create "'an accurate and logical bridge'" between the medical evidence and his decision. *Tyrian C.*, 2023 WL 310179, at *8 (quoting *Logsdon*, 2022 WL 812416, at *5). The Court therefore finds that there is substantial evidence in the record to support the ALJ's determination about Claimant's RFC.

Even if the Court were to find that ALJ Saragas did not adequately explain the consistency of Dr. Ford's opinion, the Court would consider any error in ALJ Saragas's evaluation of the consistency of Dr. Ford's opinion to be harmless. "An ALJ's failure to properly apply the regulations may be considered harmless where the goal of the regulation was otherwise met." *Marika G.*, 2024 WL 5465207, at *7 (citation and internal quotation marks omitted); *see Thaxton v. Comm'r of Soc. Sec.*, 815 F. App'x 955, 960 (6th Cir. 2020) (first citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); then citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)) (outlining the ways in which a court can find "harmless error"); *see also LaFollette*, 2023 WL 7167177, at *7 ("[T]he ALJ's failure to follow the Agency's procedural rule[s] does not qualify as harmless error where [the Court] cannot engage in meaningful review of the ALJs decision." (alterations in original) (internal quotation marks omitted) (quoting *Blakley*, 581 F.3d at 409)). In other words, "the Court must decide whether ALJ [Saragas's] explanation is

sufficient to permit meaningful judicial review and enable the Claimant to understand why" the ALJ found Dr. Ford's opinion to be only "partially consistent." *Marika G.*, 2024 WL 5465207, at *7; [Tr. 32].

Here, the ALJ's explanation is sufficient. As explained above, ALJ Saragas detailed his rationale for not adopting any marked limitations in his broader discussion of Claimant's RFC: "[t]he claimant's conservative medication management care and the repeated benign mental status/psychiatric examination findings," and other medical evidence, "all fail to support any marked limitations." [Tr. 35]. ALJ Saragas's RFC explanation as a whole permitted this Court to engage in meaningful judicial review, thereby meeting the goal of the regulation to articulate the supportability and consistency of Dr. Ford's opinion. *Compare Marika G.*, 2024 WL 5465207, at *7 (finding that error was harmless because, although the ALJ "did not cite to any specific treatments" in the discussion of a provider's opinion, the ALJ "referenc[ed]" the treatment (with citations) in the "summary of the record," which "permit[ted] meaningful judicial review and allow[ed] Claimant to understand why" the ALJ determined that the provider's "opinion was not consistent with the other evidence of record"), *with LaFollette*, 2023 WL 7167177, at *7 (determining that the error was not harmless because the court could not "discern the ALJ's explanation for deviating from the state agency consultants' findings based on the record, and consequently, the [c]ourt [could][ ]not meaningfully review his decision"); *Terhune*, 2022 WL 2910002, at *5 (explaining that error was not harmless when "the ALJ stated in conclusory fashion that all objective medical findings in the record do not support the [providers'] opinions," "without any explanation or citation to specific portions of the record").

Ultimately, ALJ Saragas sufficiently addressed the supportability and consistency of Dr. Ford's opinion, and his decision is supported by substantial evidence.

### B. Vocational Evidence

Claimant's final objection concerns the hypothetical questions presented to the Vocational Expert at step 5. Claimant states that the ALJ's

> error [in determining that he was not disabled] is not without harm as the [Vocational Expert] testified that all work would be precluded should a person further limited in that they would be off task from work an average of two or more hours per day or they might be absent from work an average of one or more days per week due to mental frailty.

[R. 11, p. 15]; *see also* [R. 14, pp. 6–7]. The Commissioner responds that "there is no merit" to this argument, since the ALJ's opinion is supported by substantial evidence, and, in any event, "Dr. Ford never imposed [the greater] limitations" that were part of a question to the Vocational Expert. [R. 13, p. 8].

Step 5 requires that an ALJ, considering Claimant's age, education, work experience, and RFC, determine whether there are jobs that exist in significant numbers in the national economy that Claimant can perform. 20 C.F.R. § 404.1520(a)(4)(v); *Katrina E. v. Comm'r of Soc. Sec.*, No. 3:21-CV-565-CHL, 2023 WL 2653389, at *14 (W.D. Ky. Mar. 27, 2023) (discussing step 5). At this stage, the burden shifts to the Commissioner. *Katrina E.*, 2023 WL 2653389, at *14; *Jordan*, 548 F.3d at 423. "The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy that the claimant can perform considering the combination of his or her limitations." *Katrina E.*, 2023 WL 2653389, at *14. "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). "Hypothetical questions, however, need only incorporate those limitations which the ALJ has

accepted as credible." *Parks v. Social Sec. Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011) (citing *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). Further, "the ALJ may pose a question involving a hypothetical individual with several limitations—and then later decide that those limitations differed from the claimant's limitations. That does not mean that the vocational expert's answer about the *hypothetical individual* binds the ALJ." *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019) (emphasis in original) (internal citations omitted). "[T]o hold otherwise would effectively eliminate the ALJ's ability to ask any questions about a hypothetical individual unless he had identified the exact contours of the claimant's disability by the time of the hearing." *Id.*

ALJ Saragas first asked the Vocational Expert a hypothetical about Claimant's ability to perform "light unskilled work in the national economy" using the RFC determination found in his decision. [Tr. 71–72]. The Vocational Expert found that "[t]here would be a reduced range of work," but provided examples of work that existed in the national economy at this ability level. *Id.* at 72. Next, the ALJ altered the hypothetical and asked the Vocational Expert:

> [A] person is further limited in that they would be off task from work an average of two or more hours per day or they might be absent from work an average of one or more days per week. In this case, it might be the need to have frequent position changes that take them off task. It might be the need to rest and recover throughout the day due to pain or to miss a day's work due to fatigue from the day before. It might be the loss of focus or distraction throughout the day due to pain or mental frailty. Do either of these behaviors for any reason, off task at least two hours per day or absent at least one day per week, eliminate all jobs?

*Id.* at 72–73. The Vocational Expert responded that those additional restrictions "would preclude all work." *Id.* at 73.

Here, Claimant asserts that the ALJ did not properly consider the Vocational Expert's answer to the altered hypothetical in making his disability determination, which Claimant believes accurately describes his impairments. *See* [R. 14, pp. 6–7]. However, the ALJ is not required to

- 17 -

incorporate the Vocational Expert's answers to hypothetical questions posed during the hearing. *Kessans*, 768 F. App'x at 536. Again, "the ALJ may pose a question involving a hypothetical individual with several limitations—and then later decide that those limitations differed from the claimant's limitations. That does not mean that the vocational expert's answer about the hypothetical individual binds the ALJ." *Id.* "[T]o hold otherwise would effectively eliminate the ALJ's ability to ask any questions about a hypothetical individual unless he had identified the exact contours of the claimant's disability by the time of the hearing." *Id.*

It is clear that the ALJ considered the Vocational Expert's testimony, as the ALJ's decision noted,

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations[.]
> . . .
> Pursuant to SSR 00-4p, the undersigned has evaluated the vocational expert's testimony, which was consistent with the Dictionary of Occupational Titles. To the extent that the vocational expert's testimony was beyond the scope of the Dictionary of Occupational Titles, including less standing, climbing differences, overhead reaching, and interaction with others, the vocational expert testified that he relied on experience and training. The undersigned accepts this explanation.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

[Tr. 37]. Moreover, in making this finding, ALJ Saragas clearly considered the Vocational Expert's testimony. *Id.* ALJ Saragas was not required to incorporate limitations just because he asked the

Vocational Expert about them, *Kessans*, 768 F. App'x at 536, and as stated above, ALJ Saragas's determination regarding Claimant's RFC is supported by substantial evidence. *Cf. LaFollette*, 2023 WL 7167177, at *10 (explaining that, when the ALJ's decision is not supported by substantial evidence, it "creates a larger domino effect. . . . Since the ALJ's hypothetical was flawed [by the erroneous RFC finding], the [Vocational Expert's] testimony based on that hypothetical was not supported by substantial evidence. And, since the ALJ's disability determination was based on the [Vocational Expert's] testimony, substantial evidence did not support his disability determination"). The Court finds substantial evidence to support the ALJ's questions presented to the Vocational Expert and that he fully considered those answers when making his decision on Claimant's claim.

As a closing note, an ALJ's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey*, 987 F.2d at 1233. While there might be evidence in the record that could support a contrary conclusion, it is clear ALJ Saragas thoroughly considered all evidence of record, and the Court finds no error in his decision. *See Peters*, 2024 WL 5077599, at *3 ("The Court's take on the merits has no bearing—it must affirm the agency decision, if supported by substantial evidence, even if it may have decided the case differently if standing in the ALJ's shoes." (citing *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011))).

### IV.   CONCLUSION

For all these reasons, the Court will affirm the decision of the Commissioner. Accordingly, **IT IS HEREBY ORDERED** as follows:

1. The final decision of the Commissioner is **AFFIRMED**.

2. A separate Judgment will be entered consistent with this Order.

This the 18th day of August, 2025.

                                                 CLARIA HORN BOOM,
                                                 UNITED STATES DISTRICT COURT JUDGE
                                                 EASTERN AND WESTERN DISTRICTS OF
                                                 KENTUCKY